IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EDWARD KINDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   18-cv-1516-RJD |
| | ) | |
| KINKAID REEDS CONSERVATION | ) | |
| DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Edward Kindle filed this action alleging Defendant Kinkaid Reeds Conservation District ("Kinkaid"), a governmental entity, trespasses on his private property to maintain water meters, in violation of the Fifth and Fourteenth Amendments.

This matter is now before the Court on Kinkaid's Motion for Summary Judgment (Doc. 52). For the reasons set forth below, the Motion is **GRANTED**.

**Factual Background**

Kindle represents that the impetus for the dispute now before the Court occurred in 2006, when Kindle was notified that Kinkaid was digging, removing trees, and taking other action necessary to gain access to their equipment and install a water meter. According to Kinkaid, there is not a water meter in the area of Kindle's property; however, there is a 10-inch water main valve (Doc. 54 at 66, ¶¶ 6-7; Doc. 54 at 69, ¶¶ 6-7). Sometime around 2006, two employees of Kinkaid went to locate the valve and drove their vehicle along the drive of Edward Kindle's property until they located the valve and parked (Doc. 53 at 66-67, ¶ 8). The Kinkaid employees unloaded a backhoe and removed underbrush to locate the water main valve (Doc. 53 at 67, ¶ 9). There was

Page **1** of **10**

no digging or bulldozing in the area (*Id.*). The Kinkaid employees were approached by a person identifying herself as Edward Kindle's sister, and she asked the employees what they were doing (Doc. 53 at 67, ¶ 10). The employees advised her that they worked for Kinkaid and were there to locate the valve (*Id.*).

Following this encounter, Kindle inquired as to Kinkaid's work, and, according to Kindle, Kinkaid sent Kindle an easement demonstrating it had access to the property at issue, identified as "The Southwest Quarter of the Northwest Quarter of Section 3, Township 9 South, Range 2 West of the third Principal Meridian" (*see* Easement for Pipeline and Appurtenances, Doc. 58 at 7-8). The Easement was dated April 4, 1972.

By way of background, on May 29, 1981, a Warranty Deed was executed by Eugene Kindle and Velma Kindle conveying two parcels of land to Billie Kindle, Robert Kindle, Judy Kindle, and Edward Kindle. The parcels are described as "[c]ommencing at the Southwest Corner of the Southeast Quarter of the Northwest Quarter of Section 3, Township 9 South, Range 2 West, Murphysboro Township, Jackson County, Illinois" (*see* Warranty Deed, Doc. 58 at 10-11). Kindle asserts that this Warranty Deed does not describe a 50-foot gap[1] separating his property into two sections. This "50-foot gap" wherein Kinkaid's waterline is placed is the crux of the dispute before the Court.

Kinkaid submitted the affidavits of its current Manager, Scott Wilmouth, and its Superintendent James Jenkins, attesting that Kinkaid owns a 10-inch water main that runs from west to east under the Big Muddy River that is located in an approximate 48-foot gap in property owned by Edward Kindle (Doc. 54 at 66, ¶¶ 6-7; Doc. 54 at 69, ¶¶ 6-7). In support of its position,

---

[1] In their briefing, Plaintiff references a 50-foot gap while Defendant references a 48-foot gap. In an effort to increase accuracy, the Court will hereinafter refer to area at issue as a 48-foot gap, noting that both Plaintiff and Defendant are referencing the same area.

Kinkaid relies in part on a permanent injunction entered by the Jackson County Circuit Court on December 3, 2009 wherein the court found that the land through which Kinkaid's water main runs is located in a gap between the boundaries of two parcels of land owned by Kindle (Doc. 53 at 3-7). The Court explicitly found that "[Kindle] holds no ownership interest in the portion of the Railroad Right-of-Way through which [Kinkaid's] water main runs" (Doc. 53 at 6, ¶ 11).   The Court also found that even if the line is under Kindle's land, "[Kinkaid has] maintained and serviced that line at that location for at least 37 years, without permission of [Kindle] or his predecessors, open, notoriously, continuously, adverse, hostile and under claim of right, and therefore have a prescriptive easement to maintain the line where it is located" (Doc. 53 at 6, ¶ 12).   Kindle appealed the Injunction to the Appellate Court of Illinois, Fifth District, which affirmed it in a Rule 23 Order on March 30, 2011 (Doc. 53 at 8-12).

It is undisputed that the water line involved in the 2009 state court proceeding is the same water line at issue in the case at bar (Deposition of Edward Kindle, Doc. 53 at 32).   However, Kindle relies on the 1981 warranty deed, asserting it does not describe a gap where Kinkaid's water valve is located.   Kindle also asserts that a survey submitted by Kinkaid shows a gap in his property, and conflicts with another survey conducted of the "Plat of Mt. Carbon Addition to Murphysboro", which does not show any gap (*see* Doc. 53 at 60 and Doc. 58 at 12).

On May 18, 2009, Kindle filed a "Complaint to Quiet Claim Title" against Scott Browner in Jackson County requesting the Court to find and confirm title to the property described as "the southwest corner of the southeast quarter of the northwest quarter of section, township 9 south, range 2 west, of the third principal meridian, Jackson County, Illinois," to be held by Kindle and his siblings (Doc. 53 at 13-14).   In this Complaint, Kindle asserted that the property he described was inherited through a warranty deed dated May 29, 1981, and claims that Scott Browner alleged

he purchased this property from Gilbert and Olga Todd, who had no legal or equitable right or claim in said property (Doc. 53 at 13).   On September 30, 2010, following a trial on Plaintiff's Complaint, the Court found that Scott Browner is the owner of the real estate described by Kindle, and described in the deeds recorded in the Jackson County, Illinois Recorder's Book (Doc. 53 at 15).

Following the 2006 incident described above, Kindle's property has not been used by Kinkaid employees to access its water main and valve (Doc. 53 at 67, ¶ 11).   The next time Kinkaid was in the area was in the summer of 2012 (Doc. 53 at 67, ¶ 12).   Two employees of Kinkaid, including Manager Scott Wilmouth, closed the valve on the water main (*Id.*).   To effect this, the employees and employees of the City of Murphysboro removed underbrush where the valve was located; however, Kindle's land was not used to access the valve, and his land was not disturbed (*Id.*).   Kindle testified that he was informed that Kinkaid and the City of Murphysboro were again on his property in 2018 (Doc. 53 at 52).   Kindle testified a shovel was left behind (Doc. 53 at 53).   Kinkaid does not have any record of accessing the water main or Kindle's land in 2018.   Kinkaid asserts there was a leak to the water main near the Big Muddy River on May 24, 2019, and Superintendent Jenkins and Chief Operator Hargraves were at the valve several times on that day between 3:00 p.m. and 11:00 p.m. (Doc. 53 at 67, ¶ 13).   According to the affidavit of Scott Wilmouth, Kinkaid did not have any heavy equipment and did not do any digging, clearing, or disturbing of the land (Doc. 53 at 67-68, ¶ 13).   Kinkaid also did not enter upon Kindle's property (Doc. 53 at 68, ¶ 13).   On May 25, 2019, the City of Murphysboro re-tapped Kinkaid's water main to temporarily serve one of Murphysboro's customers, Scott Browner (Doc. 53 at 68, ¶ 14).   Kinkaid employees were not present when this was done (*Id.*).   Also, on June 26, 2019, Superintendent Jenkins returned to the valve to reopen it after a boil order came back as

satisfactory (Doc. 53 at 68, ¶ 15).   No employees of Kinkaid have been back to the area of the

water valve at issue since June 26, 2019 (Doc. 53 at 68, ¶ 16).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also*

*Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of

material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary

judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue

for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting

*Anderson*, 477 U.S. at 248).

In assessing a summary judgment motion, the district court views the facts in the light most

favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital,*

*Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).   The Seventh

Circuit has remarked that summary judgment "is the put up or shut up moment in a lawsuit, when

a party must show what evidence it has that would convince a trier of fact to accept its version of

events."   *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle*

*Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## **Discussion**

Kinkaid argues it is entitled to summary judgment because Kindle is barred by *res judicata* from asserting a claim for a taking for any activities prior to December 3, 2009, and Kindle is barred by collateral estoppel from asserting that he and his siblings own the property at issue. Kinkaid also argues there is no genuine dispute of material fact that Kindle cannot produce evidence sufficient to make a showing of a taking or of a loss to support an action under the Takings Clause of the Fifth Amendment.

### *Res Judicata*

The doctrine of *res judicata* prevents re-litigation of matters that were fully litigated in an earlier suit that resulted in a judgment on the merits. *Groesch v. City of Springfield*, 635 F.3d 1020, 1029 (7th Cir. 2011). Because of the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect that the court rendering the judgment would give it. *Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009); *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). Thus, when examining whether an Illinois court judgment bars a federal lawsuit because of *res judicata*, the Court looks to the preclusive effect an Illinois court would give the judgment in question. *Groesch*, 635 F.3d at 1029; *Licari*, 298 F.3d at 666.

Under Illinois law, *res judicata* applies if the prior decision: (1) was a final judgment on the merits rendered by a court of competent jurisdiction; (2) involved the same parties or their privies; and (3) constituted the same cause of action as the current suit. *Nowak v. St. Rita High School*, 757 N.E.2d 471, 477 (Ill. 2001); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992); *Groesch*, 635 F.3d at 1029; *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011). "If the three elements

necessary to invoke res judicata are present, res judicata will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Chicago Title*, 664 F.3d at 1079 (quotation omitted). *Res judicata* will not apply "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court. A plaintiff is afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (quoting *Licari*, 298 F.3d at 667).

Here, there was clearly a final judgment on the merits upon entry of the Injunction by the Circuit Court of the First Judicial Circuit in Jackson County, Illinois on December 3, 2009, and the Rule 23 Order entered by the Appellate Court of Illinois, Fifth District, on March 30, 2011. As evidenced by these Orders, Kindle was heard and had a full and fair opportunity to litigate the claim in the state court proceedings. As to the second element considered under *res judicata*, the state court action involved the same parties, Edward Kindle and Kinkaid Reeds Conservation District. The third element considered is whether the state court action constituted the same cause of action as the current suit. This element depends on whether the claims arise out of the same set of operative facts or the same transaction. *Matrix IV, Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (citation omitted). This "transactional" inquiry focuses on whether the claims comprise the same "core of operative facts [that] give rise to a remedy." *Id.* (quoting *In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987)). Even if the two claims are based on different legal theories, the "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* (quoting *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir. 1993)). Although the state court action consisted of the entry of a permanent injunction, and the case at bar sets forth a claim under

Page **7** of **10**

the Fifth Amendment Takings clause, the same set of operative facts are at issue — ownership of

the land where Kinkaid's water main and valve are located.   The state court's finding that Kindle

does not own the land where Kinkaid's water main is located, or that it had a prescriptive easement

to maintain the line, obviates Kindle's claim in this case as there can be no taking if Kindle does

not own the property at issue.   Kinkaid also correctly notes that Kindle could have filed a

counterclaim for a taking in the state court proceeding, but did not.   Because the First Judicial

Circuit of Jackson County, Illinois ruled that Kindle has no ownership interest in the land where

Kinkaid's water main is located, or in the alternative, that Kinkaid holds a prescriptive easement to

the extent the water main crosses a portion of Kindle's land, Plaintiff's constitutional claim of a

taking is barred by *res judicata*.

### Collateral Estoppel

To the extent Kindle asserts that he and his siblings own the Browner property, Kinkaid

argues this assertion is barred by collateral estoppel[2].   Kinkaid explains that at Kindle's

deposition, he testified that he "hold[s] joint property where Browner is located" (Doc. 53 at 29).

However, Kinkaid points to Plaintiff's state court Complaint to Quiet Claim Title against Browner,

wherein the court denied Plaintiff's complaint and found that Kindle failed to prove that he has any

rights in the lands owned by Browner (Doc. 53 at 15).

28 U.S.C. § 1738's "full faith and credit" requirement encompasses the equitable principle

of collateral estoppel.   Generally, collateral estoppel prohibits the re-litigation of any settled issue

---

[2] The Court notes Kinkaid did not set forth the affirmative defense of collateral estoppel in its answer to Kindle's amended complaint.   However, the Court still considers Kinkaid's argument as it finds Kindle was not unfairly prejudiced by the incorporation of the defense in Kinkaid's motion for summary judgment.   Notably, Kindle did not set forth any allegation in his complaint that he owned any part of Browner's land, and this only became evident at his December 13, 2019 deposition.   *See Burton v. Ghosh*, 961 F.3d 950, 965 (7th Cir. 2020) ("An affirmative defense is waived when it has been knowingly and intelligently relinquished and forfeited when the defendant has failed to preserve the defense by pleading it. A district court may, however, exercise its discretion to allow a late affirmative defense if the plaintiff does not suffer prejudice from the delay.") (internal citations omitted).

that was necessary to a prior final judgment.   Under Illinois law, the "minimum requirements" for application of collateral estoppel are: (1) The issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.   *Gumma v. White*, 833 N.E.2d 834, 843 (Ill. 2005).

The Judgment entered by the Circuit Court of the First Judicial Circuit, Jackson County, Illinois on September 30, 2010 clearly relates to ownership of the Browner property, and was a final judgment on the merits held after a two-day trial.   Further, Kindle was the plaintiff in the state court action and the ownership of the Browner property was litigated.   Thus, collateral estoppel clearly applies and Kindle is now barred from claiming any ownership interest in the Browner property in order to effect his claim under the Fifth Amendment.

### *Fifth Amendment Taking*

The takings clause of the Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation."   U.S. Const. amend. V.   *See Squires-Cannon v. Forest Preserve District of Cook County*, 897 F.3d 797, 802 (7th Cir. 2018).   The Fourteenth Amendment makes the takings clause applicable to the States and their subdivisions.   *Id.* (citations omitted).

The Court's analysis of whether there is evidence in the record for a reasonable jury to find there was a taking is abbreviated insofar as there is no indication that Kinkaid entered or otherwise used Kindle's property in a way that deprived Kindle of any property interest.   The Court reiterates that Kindle is bound by the principles of *res judicata* and collateral estoppel and, as a result, the Court finds Kinkaid's water main was not located on Kindle's property.   Insofar as there is any evidence Kinkaid entered on the property to maintain the water valve, such entry does

Page **9** of **10**

not amount to a taking as there is no evidence that Kindle's property was disturbed or in any way

destroyed.  *See Dutton v. City of Crest Hill*, 547 F.Supp. 38, 42 (N.D. Ill. June 23, 1982) ("to

establish a taking, [plaintiffs] will have to show substantial damage to their property or an

interference with their use of their property of such magnitude that it amounts to an easement.").

Indeed, the only evidence indicates there was removal of underbrush where Kinkaid's water valve

is located, and it has been found that the water valve is not located on Kindle's land.  For this

reason, the Court finds no reasonable jury could find Kinkaid's actions amounted to a taking under

the Fifth Amendment.

**Conclusion**

The Court finds Kindle's claims under the Fifth and Fourteenth Amendments are barred

under the doctrine of res judicata and collateral estoppel, and there is insufficient evidence in the

record to establish a taking under the Fifth Amendment.   Accordingly, Defendant Kinkaid Reeds

Conservation District's Motion for Summary Judgment (Doc. 52) is **GRANTED**.   The Clerk of

Court is directed to enter judgment in favor of Defendant Kinkaid Reeds Conservation District and

against Plaintiff Edward Kindle.

**IT IS SO ORDERED.**

**DATED: September 14, 2020**

_s/_  *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**